UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                              :
                                                    :          Chapter 11
DAVID FRANCIS CHARLES REYES,        :          Case No.: 14-13233 (SMB)
                                                    :
                    Debtor.                    :
--------------------------------------------------------X

## MEMORANDUM DECISION GRANTING MOTION
## TO DISMISS THE CASE AND DENYING SANCTIONS

**A P P E A R A N C E S:**

ROSENBERG, MUSSO & WEINER LLP
Attorneys for Jo Anne Simon
26 Court Street, Suite 2211
Brooklyn, NY 11242

      Bruce Weiner, Esq.
        Of Counsel

BRIAN M. DELAURENTIS P.C.
Attorney for Debtor
36 West 44th Street, Suite 911
New York, NY 10036

      Brian M. DeLaurentis, Esq.
        Of Counsel

PETERSON DELLECAVE LLP
Attorney for David Carraway
233 Broadway, Suite 1800
New York, NY 10007

      Duncan Peterson, Esq.
        Of Counsel

UNITED STATES TRUSTEE
201 Varick Street, Suite 1006
New York, NY 10013

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Jo Anne Simon, as trustee (the "Trustee") of the Gerald Arthur Living Trust (the "Trust") has moved to dismiss this chapter 11 case and seeks sanctions under Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011"), 28 U.S.C. §1927 and 11 U.S.C. § 105 against the debtor and his counsel, Brian DeLaurentis, Esq., on the ground that the case was filed in bad faith. (*Motion to Dismiss the Debtor's Chapter 11 Case and for Sanctions for a Bad Faith Filing*, dated Feb. 4, 2015 (the "*Motion*") (ECF Doc. # 22).)[1] In addition, the Court reserved decision on an earlier request for sanctions made in connection with Simon's successful motion to remand certain proceedings removed from the New York Surrogate's Court by the debtor. For the reasons that follow, the Court grants the motion to dismiss but denies the requests for sanctions.

## BACKGROUND

### A.    The Dispute Regarding the Property

The impetus for this bankruptcy case was certain real property located at 149 East 29th Street in Manhattan (the "Property") formerly owned by Gerald Arthur. In 2002, Arthur executed a will that apparently left the Property to Abraham Pelotin. Subsequent to the execution of the will, the debtor became Arthur's domestic partner and they lived together at the Property.

According to the debtor, Arthur decided to execute a new will in 2007, and leave the Property plus other assets to the debtor. He retained Jo Anne Simon, Esq. to prepare the will, but contrary to Arthur's wishes, Simon created the Trust and named herself as the Trustee.[2] In broad terms, the Trust would acquire title to the Property as well as Arthur's other assets and pay his

---

[1]    "ECF" refers to the docket in this case. "ECF" followed by a case or adversary proceeding number refers to the docket in that case or adversary proceeding.

[2]    A copy of the Trust Agreement is annexed as Exhibit 15 to the *Declaration of David Reyes in Opposition to Motion to Dismiss, Abstain & for Sanctions*, dated Feb. 19, 2015 (ECF Doc. # 25).

expenses during his lifetime.   Arthur could revoke or amend the Trust through an executed

writing, dated and delivered to the Trustee.  If the Trust was revoked, the Property reverted to

Arthur.  Upon his death, the Trust became irrevocable, and Trustee would distribute his residuary

estate, including the Property, to one or more charities in accordance with the wishes that Arthur

had expressed to Simon.

According to the debtor, Arthur executed the Trust on October 6, 2008, at a time when he

was hospitalized, in pain and taking medication.  At the same time, he also executed a Power of

Attorney appointing Simon as his attorney-in-fact.  The next day, Simon executed and delivered

a deed from Arthur, as his attorney-in-fact, to herself as Trustee of the Trust.  Simon recorded the

deed on November 21, 2008 and the Trust became the record owner of the Property.  Citing

Simon's billing records, the debtor contends that the Trust, Power of Attorney and deed were

back-dated.

According to the debtor, Arthur attempted to revoke the Trust in writing in August 2009,

but Simon ignored him.  Arthur died in February 2011, and his death spawned the numerous

disputes regarding ownership of the Property.  Simon claimed that the Trust owned the Property.

The debtor claimed that the Trust was invalid or had been revoked, and he had an equitable

interest in the Property by virtue of Simon's failure to prepare a will under which Arthur would

have conveyed the Property to the debtor.

In addition, the 2002 will surfaced, and the executor, David Carraway, filed a probate

proceeding and was appointed the temporary administrator of Arthur's estate.  Pamela Green, an

alleged relative of Arthur's, claimed, as did the debtor, that the 2002 will had been revoked, and

she was entitled to Arthur's property under the laws of intestacy.

3

These various claims were the subject of several proceedings pending in Surrogate's Court.  In addition, Green and the Debtor had commenced an action in Supreme Court and joined all of the claimants.  They sought a judgment determining that Green owned the Property in fee simple, or alternatively, the debtor was the beneficiary of a constructive trust over the Property.  In addition, the debtor demanded money damages against Simon, and requested an injunction delaying New York City's tax sale of the Property.  The Supreme Court action was subsequently transferred to the Surrogate's Court.

**B.      The Bankruptcy Case**

By order dated November 17, 2014, the Surrogate's Court directed the parties to show cause on November 25, 2014 why the *lis pendens* filed by the debtor should not be lifted and the Trustee should not be allowed to sell the Property pursuant to a signed contract of sale.  The debtor filed this chapter 11 case on November 24, 2014, staying the hearing on the order to show cause.  The debtor's schedules and statement of financial affairs disclosed the following:  the debtor's sole material assets were his asserted equitable interest in the Property and his disputed interest as a Trust beneficiary.  His liabilities included approximately $224,000 in real estate tax and Medicaid liens and $5,666 in liquidated unsecured debt.  His monthly income was $800, exactly the same as his monthly expenses.

The Surrogate's Court had scheduled a hearing in connection with the action transferred from the Supreme Court for January 9, 2015.  One day before the scheduled hearing, the debtor removed several of the proceedings pending before the Surrogate's Court pursuant to 28 U.S.C. § 1452, including the causes of action transferred from the Supreme Court to the Surrogate's Court, Simon's application to eject the debtor from the Property, Carraway's application to compel the turnover of the Property and Simon's application to sell the Property.  One of the

4

motivating factors prompting the filing of the chapter 11 case and the removal of the Surrogate's Court proceedings was the debtor's belief that the Surrogate's Court was biased in favor of Simon because she was a member of the New York State Assembly, sat on the Judiciary Committee and Simon and/or the Judiciary Committee and/or the New York State Assembly presided over the Surrogate's Court's budget as well as any proposed modifications to state law that affected the Surrogate's Court.

In response, Simon moved to remand and for sanctions pursuant to 28 U.S.C. § 1447(c). The Court rendered a bench decision on March 17, 2015 concluding that mandatory abstention was required, and thereafter signed an order that remanded the removed proceedings to the Surrogate's Court while reserving decision on Simon's request for fees, costs and expenses pursuant to 28 U.S.C. § 1447(c).  (*Order of Remand*, dated Mar. 18, 2015 (ECF/Adv P. No. 15-01008 Doc. # 13).)  Following remand, the Court granted Simon's motion for relief from the automatic stay to allow her to continue the state court litigation.  (*Order Vacating Stay*, dated June 3, 2015 (ECF Doc. # 43).) [3]

### C.    The Motion to Dismiss

While the remand motion was pending, Simon filed the *Motion* arguing that the debtor had filed this case in bad faith as a litigation tactic for the sole purpose of transferring the state court litigations to this Court.  The debtor had few debts, was not being pressed for payment by the few creditors he did have and had no ability to reorganize.  Simon also argued that although she was not a creditor, she was nonetheless a party-in-interest because her rights individually and

---

[3]    After the Court remanded the state court proceedings, the debtor asked the District Court to withdraw the reference and hear the proceedings that had been remanded.  On July 24, 2015, the District Court denied the debtor's motion as moot.  (*Order*, dated July 24, 2015 (ECF/Case No. 15-CV-4624 Doc. # 5).)

as Trustee were affected by the filing of the bankruptcy case and the removal of the Surrogate's

Court proceedings to which she was a party.

In response, the debtor contested Simon's standing, and argued that he filed this case for

the legitimate purpose of liquidating the Property and paying his debts, including his debt to

Medicaid that was increasing daily at an alarming rate.  The debtor (and his counsel) also

opposed sanctions, arguing that Simon failed to serve a safe harbor motion as required by Rule

9011 or demonstrate subjective bad faith required under 28 U.S.C. § 1927.

## DISCUSSION

### A.    Standing

 "[T]he question of standing is whether the litigant is entitled to have the court decide the

merits of the dispute *or of particular issues.* This inquiry involves both constitutional limitations

on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S.

490, 498 (1975) (emphasis added).  Constitutional, or Article III standing, "imports justiciability:

whether the plaintiff has made out a 'case or controversy' between himself and the defendant

within the meaning of Art. III." *Id.*  To establish Article III standing, a party must show (1) an

injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) the injury is

"fairly traceable" to the conduct complained of, and (3) it is likely, as opposed to speculative,

that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife,* 504

U.S. 555, 560-61 (1992) (citations omitted).  Prudential standing refers to the requirement that

even "[w]hen the plaintiff has alleged injury sufficient to meet the 'case or controversy'

requirement, ... the plaintiff generally must assert his own legal rights and interests, and cannot

rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499.

In addition, section 1109(b) of the Bankruptcy Code, which only applies in chapter 11 cases, provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  The Bankruptcy Code does not define "party in interest," *Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re Refco Inc.*), 505 F.3d 109, 117 (2d Cir.2007); *Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.*), 698 F.2d 571, 573 (2d Cir.1983), and the list in § 1109(b) is not exhaustive.  *Savage & Assocs., P.C. v. K&L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 60 (2d Cir. 2011).  Instead, the phrase must be interpreted on an *ad hoc* basis, *id.*, to ensure "that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains. . . ." *In re James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir.1992)(Posner, J.).  Thus, an entity may be a party-in-interest with standing for one purpose but lack standing for other purposes. *Peachtree Lane Assocs., Ltd. v. Granader* (*In re Peachtree Lane Assocs., Ltd.*), 188 B.R. 815, 824 (N.D. Ill. 1995); *In re Ofty Corp.*, 44 B.R. 479, 481 (Bankr. D. Del. 1984).

Although a party-in-interest typically has a financial stake in the outcome of the bankruptcy case, courts have recognized in limited circumstances that someone with a legal rather than a financial interest in the case may appear. *Teligent*, 640 F.3d at 60.  Where a financial stake is absent, the movant can still establish standing to seek dismissal by demonstrating that the filing or pendency of the bankruptcy case impaired the movant's legal rights or the ability to perform his duties. *E.g.*, *El Torero Licores v. Raile* (*In re El Torero Licores*), No. SACV 13-00875 (VAP), 2013 WL 6834609, at *3 (C.D. Cal. Dec. 20, 2013) (state court receiver granted sole authority to file bankruptcy petition had standing to move to dismiss

petition filed by debtor because receiver had "legally protected interest in being the sole party with the authority to file bankruptcy"); *In re Overview Equities, Inc.*, 240 B.R. 683, 687 (Bankr. E.D.N.Y. 1999) (party with legal interest in property, rather than claim, was a party in interest); *Ofty*, 44 B.R. at 481-82 (court-appointed receiver had standing to seek dismissal, transfer of venue and conversion of case filed by debtor's principal because the filing prevented him from carrying out his duties).

The Trust was the record owner of the Property, and Simon was tasked with distributing the property of the Trust upon Arthur's death. Simon sought to perform her duties as Trustee by selling the Property although there are concededly competing claims to ownership. The filing of the bankruptcy case triggered an automatic stay that stopped her efforts to sell the Trust's Property in the Surrogate's Court, and more generally, to take any actions that interfere with any property in which the debtor asserted an interest. It would be an odd rule that prohibited the Trustee from seeking to dismiss a petition that was filed for the purpose of derailing her efforts to perform her duties as Trustee. Although the automatic stay has since been lifted, it was extant when she made the *Motion*, and the debtor has not argued that the stay relief stripped her of the standing she had when she made her motion. Moreover, the debtor filed an appeal from the order lifting the automatic stay, (*Notice of Appeal*, dated June 16, 2015 (ECF/Adv. P. No. 15-01008 Doc. # 14)), and the reinstatement of the stay is a possibility. Accordingly, Simon, as Trustee, is a party-in-interest for the purpose of moving to dismiss the chapter 11 even though the Trust is not a creditor and does not have a financial stake in the case.

Simon has also demonstrated Constitutional and prudential standing in her capacity as Trustee. Generally, a "party in interest" with respect to a particular issue will also meet the requirement for Article III standing with respect to that issue. *See* 7 ALAN N. RESNICK & HENRY

8

J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1109.04[4][a], at 1109–36 (16th ed. 2015) ("COLLIER").

Here, the Trustee was aggrieved by the filing of the chapter 11 for the reasons stated, and the

dismissal of the case will relieve her of the harm caused by the filing of the chapter 11 case.  In

addition, Simon is asserting her own rights as Trustee and satisfies the requirement for prudential

standing.

**B.      The Motion to Dismiss**

Bankruptcy Code § 1112(b) authorizes the Court to convert or dismiss a case for cause.

The section contains a non-exclusive list of "causes" for conversion or dismissal, and although

not listed, the Court may convert or dismiss a case that was filed in bad faith.  A petition is filed

in bad faith "if it is clear that on the filing date there was no reasonable likelihood that the debtor

intended to reorganize and no reasonable probability that it would eventually emerge from

bankruptcy proceedings."  *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal,*

*Inc.*)*,* 931 F.2d 222, 227 (2d Cir.1991); *accord In re Kingston Square Assocs.,* 214 B.R. 713, 725

(Bankr.S.D.N.Y.1997) ("The standard in this Circuit is that a bankruptcy petition will be

dismissed if both objective futility of the reorganization process and subjective bad faith in filing

the petition are found.") (emphasis omitted).

Debtors rarely admit to their own bad faith.  In *C-TC 9th Ave. P'ship* v. *Norton Co.* (*In re*

*C-TC 9th Ave. P'ship*)*,* 113 F.3d 1304 (2d Cir. 1997), the Second Circuit identified several

badges that supported a finding that a chapter 11 case was filed in bad faith:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to
those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of
arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*C-TC*, 113 F.3d at 1311 (quoting *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139

B.R. 828, 832 (W.D.Ky.1992)). Although these factors are generally applied in single asset real

estate cases, they are appropriate to apply in this case because it, too, is essentially a single asset

real estate case concerning the Property.

The application of the *C-TC* factors supports the conclusion that the debtor filed this

chapter 11 case in bad faith. First, the debtor has only one asset; he claims that Simon holds the

Property in constructive trust for his benefit.[4]  Second, the debtor filed the chapter 11 one day

before the return date of the hearing to sell the Property, and the filing stayed the hearing. Third,

the debtor has few unsecured creditors; his principal creditor is Medicaid which he scheduled as

secured. The debtor also scheduled a secured claim for real estate taxes, but his debt is

contingent on his ownership of the Property. Fourth, although the Surrogate's Court proceedings

concern a multi-party dispute regarding ownership of the Property, that dispute can be resolved

in state court. In fact, this Court remanded the removed proceedings because it concluded, *inter

alia*, that the state court was better able to resolve the factual and legal issues presented by the

dispute. Fifth, the debtor has no cash flow or operations or employees, and is unable to meet his

---

[4]      The debtor's schedules also listed a disputed beneficial interest in Trust property which may refer to other Trust property. This other property has not been identified but the debtor's rights in any such property rise or fall with his rights to the Property.

personal expenses as evidenced by the growing Medicaid lien.  This is not to suggest that chapter 11 would never be appropriate, but it is plainly premature until the debtor is determined to be the owner of the Property; absent ownership of the Property, there is nothing to reorganize.

This brings me to the last and most significant badge of bad faith in this case.  The debtor concedes that he filed the chapter 11 case in order to litigate his rights in this Court instead of the Surrogate's Court.  "As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith."  *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988) (citations omitted); *accord In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) (dismissing chapter 11 case because "[t]he debtor is unable to propose a meaningful plan of reorganization until its litigation . . . is resolved [and] [t]hus, it is evident that the debtor seeks to use this court not to reorganize, but to relitigate. This is an impermissible use of Chapter 11 of the Bankruptcy Code.").  Here, the debtor filed the bankruptcy case solely as a litigation tactic to try the dispute in a forum he deemed more favorable.

Accordingly, the Court concludes that the debtor filed this case in bad faith, and it is dismissed pursuant to 11 U.S.C. § 1112(b).

C.      **Sanctions**

1.      **Sanctions for Filing the Case**

Simon seeks sanctions under Rule 9011, 28 U.S.C. § 1927 and the Court's inherent

authority through 11 U.S.C. § 105(a) based on the bad faith filing of the chapter 11 case.

a.      **Bankruptcy Rule 9011**

With certain exceptions, every petition, pleading, written motion or other paper presented

to the court must be signed by the party's attorney, and if the party is *pro se*, by the party

himself.  FED. R. BANKR. P. 9011(a).  Here, the debtor verified the petition and DeLaurentis

signed it on behalf of his firm as the debtor's attorney.

By signing the petition, the debtor and DeLaurentis certified that to the best of their

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

> (1) [the petition] is not being presented for any improper purpose, such as to
> harass or to cause unnecessary delay or needless increase in the cost of
> litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by
> existing law or by a nonfrivolous argument for the extension, modification, or
> reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if
> specifically so identified, are likely to have evidentiary support after a
> reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if
> specifically so identified, are reasonably based on a lack of information or
> belief.

FED. R. BANKR. P. 9011(b).

Rule 9011 parallels Rule 11 of the Federal Rules of Civil Procedure, and the

jurisprudence under Rule 11 informs the interpretation and application of Bankruptcy Rule

9011.[1]  *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker* (*In re Highgate Equities, Ltd.*),

279 F.3d 148, 151 (2d Cir. 2002).  Rule 11 "establishes an objective standard, intended to

eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."  FED. R.

CIV. P. 11 advisory committee's note (1993).

The decision whether to impose sanctions for a violation of Rule 9011 is discretionary.

10 COLLIER ¶ 9011.06[1], at 9011-16.  Furthermore, the sanction is designed to deter rather than

compensate, and should be no more than is necessary to effect this goal:

> (c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court
> determines that subdivision (b) has been violated, the court may, subject to the
> conditions stated below, impose an appropriate sanction upon the attorneys, law
> firms, or parties that have violated subdivision (b) or are responsible for the
> violation.
>
> . . . .
>
>> (2) *Nature of sanction; limitations.* A sanction imposed for violation of this
>> rule shall be limited to what is sufficient to deter repetition of such conduct or
>> comparable conduct by others similarly situated.  Subject to the limitations in
>> subparagraphs (A) and (B), the sanction may consist of, or include, directives
>> of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on
>> motion and warranted for effective deterrence, an order directing payment to
>> the movant of some or all of the reasonable attorneys' fees and other expenses
>> incurred as a direct result of the violation.
>>
>> (A) Monetary sanctions may not be awarded against a represented party for a
>> violation of subdivision (b)(2).

FED. R. BANKR. P. 9011(c)(2).  In deciding the appropriate sanctions, courts may consider

whether the improper conduct was willful or negligent, whether it was part of a pattern of

activity or an isolated event, whether it infected the entire pleading or only one particular count

or defense, whether the violator engaged in similar conduct in other litigation, whether it was

---

[1]    The debtor and DeLaurentis contend that the motion for sanctions under Rule 9011 should be denied
because Simon failed to send a "safe harbor motion" and afford them the opportunity to withdraw the petition.  The
"safe harbor" provision in Bankruptcy Rule 9011(c)(1)(A) does not apply if the bad faith relates to the filing of the
petition because the filing has immediate, serious consequences and there is no absolute right to withdraw a chapter
7 or chapter 11 petition.  10 COLLIER ¶ 9011.05[1][b], at 9011-14.

intended to injure, the effect that the improper conduct had on the judicial process in time and expense, and whether the responsible person is trained in the law.  When contemplating the amount of a monetary sanction, the court may also consider what is necessary to deter the violator from repeating the improper conduct in the same case in light of his financial resources and to deter similar activity by other litigants.  FED. R. CIV. P. 11 advisory committee's note (1993).

I assume without deciding that the standard of objective bad faith needed to support dismissal of the petition is the same as the standard to impose sanctions under Rule 9011.  Nevertheless, several of the cited factors weigh against imposing sanctions.  Although the debtor and DeLaurentis filed the petition for an improper purpose, they were not seeking to delay or harass Simon or anyone else.  To the contrary, they were trying to expedite the determination of the debtor's rights.  The debtor is on public assistance and desperately needs a place to live.[5] The debtor, though more probably DeLaurentis, clung to the sincere if misguided belief that Simon's position as a member of the New York State Assembly and the Assembly's Judiciary Committee would so affect the Surrogate as to preclude an impartial decision.  The fault was not raising the issue with the Surrogate's Court, and instead, filing the bankruptcy case and removing the litigation to this Court as a means of avoiding the perceived bias.  Furthermore, the improper conduct was not intended to injure anyone, and is not likely to recur.

It is true that certain considerations also weigh in favor of sanctions, including a monetary award.  DeLaurentis is a lawyer who should have known better.  The filing of the case

---

[5]     It may be unrealistic to believe that if the debtor prevails he will be able to afford to live at the Property given the carrying costs, including accrued and accruing real estate taxes, and his insufficient income.  Nevertheless, there may be substantial equity in the Property that, if sold, will provide the debtor with the money needed to find another place to live.

followed by the removal of the Surrogate's Court proceedings resulted in the time and expense

necessary to undo what was done.  Finally, other litigants must be deterred from engaging in the

same improper conduct.  Nevertheless, in light of all of the circumstances, including the honest

though mistaken motivations behind the filing of the bankruptcy case and the limited effect it

ultimately had on the Surrogate's Court proceedings, I decline in the exercise of my discretion to

award any sanctions under Rule 9011.

### b.      28 U.S.C. § 1927 and 11 U.S.C. § 105(a)

Section 1927 authorizes a "court of the United States" to award attorney's fees and other

excess costs and expenses against an attorney or other party authorized to practice before the

courts who "multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. §

1927.[6]   It imposes an obligation on attorneys to avoid dilatory tactics throughout the entire

litigation, and "[b]ad faith is the touchstone of an award under this statute."  *United States v. Int'l*

*Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 948 F.2d 1338,

1345 (2d Cir. 1991).

A court may also impose sanctions under 11 U.S.C. § 105(a) pursuant to its inherent

power, which "derives from the fact that courts are 'vested, by their very creation, with power to

impose silence, respect, and decorum, in their presence, and submission to their lawful

mandates.'"[7]  *Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol*, 194 F.3d 323, 336 (2d Cir.

---

[6]      There is some controversy regarding whether a bankruptcy court is a "court of the United States" under §
1927.  *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102-04 (3d Cir. 2008) (citing cases).  However, in
*Cohoes Indus. Terminal*, the Second Circuit ruled that a bankruptcy court may impose sanctions under 28 U.S.C. §
1927.  931 F.2d at 230.

[7]      "'Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper
conduct.'"  *In re Green*, 422 B.R. 469, 473-74 (Bankr. S.D.N.Y. 2010) (quoting *Mapother & Mapother, P.S.C. v.
Cooper* (*In re Downs*), 103 F.3d 472, 477 (6th Cir. 1996)).

1999) (quoting *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991)).  "One component of a court's

inherent power is the power to assess costs and attorneys' fees against either the client or his

attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

*Int'l Bhd. of Teamsters*, 948 F.2d at 1345 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness

Soc'y*, 421 U.S. 240, 258-59 (1975)).  "[I]n practice, 'the only meaningful difference between an

award made under § 1927 and one made pursuant to the court's inherent power is that awards

under § 1927 are made only against attorneys or other persons authorized to practice before the

courts while an award made under the court's inherent power may be made against an attorney, a

party, or both.'"  *Schlaifer*, 194 F.3d at 336 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273

(2d Cir. 1986)).

        Courts in this Circuit construe § 1927 "narrowly and with great caution, so as not to stifle

the enthusiasm or chill the creativity that is the very lifeblood of the law."  *Mone v. Comm'r of

Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985) (internal quotation marks omitted); *accord

Romeo v. Sherry*, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004).  Likewise, the Supreme Court has

admonished that "[b]ecause of their very potency, inherent powers must be exercised with

restraint and discretion," *Chambers*, 501 U.S. at 44, and "great caution."  *Id.* at 43 (internal

quotation marks omitted).  "To impose sanctions under either authority, a court must find clear

evidence that (1) the offending party's claims were entirely without color, and (2) the claims

were brought in bad faith—that is, 'motivated by improper purposes such as harassment or

delay.'"  *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer*, 194 F.3d at

336)); *accord Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc.*, No. 03 Civ. 9623 (JFK),

2005 WL 2036033, at * 5 (S.D.N.Y. Aug. 23, 2005).  Notably, the "'[t]he test is conjunctive and

neither meritlessness alone nor improper purpose alone will suffice.'"  *Pac. Elec. Wire & Cable*

16

*Co.*, 2005 WL 2036033, at *5 (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985)).

Simon is not entitled to sanctions under 28 U.S.C. § 1927 or the Court's inherent authority because the filing of the chapter 11 case was not done in bad faith within the meaning of the sanctions authorities.  As already stated, the debtor and DeLaurentis were not seeking to delay or harass Simon or any of the other litigants involved in the Surrogate's Court proceedings.  Instead, the case was filed and the proceedings were removed based on their honest belief that the debtor could get a quicker and fairer resolution of the debtor's claim to the Property in this Court.  Furthermore, the debtor's claim to the Property is not frivolous, and if proved, may entitle him to a constructive trust in the Property superior to the Trust's interest.  *See Latham v. Father Divine*, 85 N.E.2d 168, 171 (N.Y. 1949) (constructive trust will arise in favor of intended legatee where defendants by force and fraud prevented the testator from making a will in favor of the intended legatee), *reargument motion denied*, 86 N.E.2d 114 (N.Y. 1949).

### 2.    Sanctions for Removing the Surrogate's Court Proceedings

When the Court remanded the removed proceedings, it reserved decision on Simon's request for costs and fees under 28 U.S.C. 1447(c).[8]  An award of costs and fees under § 1447(c) is discretionary.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005); *Morgan Guar. Trust Co. of New York v. Republic of Palau*, 971 F.2d 917, 923-24 (2d Cir. 1992); *Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp. 2d 706, 712 (S.D.N.Y. 2003).  There is no presumption in favor of awarding fees and costs when granting a motion to remand.  *Martin*, 546 U.S. at 137.  In considering whether to award attorneys' fees, a court "should recognize the

---

[8]     Section 1447(c) provides in pertinent part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.  "[T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

The Court declines to award fees and costs under § 1447(c).  Although the Court has concluded that the filing of the chapter 11 case was primarily a litigation tactic, the removal itself was not objectively unreasonable or impermissible under the law.  Title 28, § 1452(a) allows a party to remove a claim or cause of action if the district court has jurisdiction of the claim or cause of action under 28 U.S.C. § 1334.  The District Court and this Court through the standing order of reference had jurisdiction over the claims and causes of action asserted in the Surrogate's Court proceedings because they affected the debtor's interest in the Property.

Submit separate orders (1) in the case, dismissing the chapter 11 case and denying sanctions and (2) in the adversary proceeding, denying sanctions and closing the adversary proceeding.

Dated: New York, New York
       August 4, 2015

                                          /s/ *Stuart M. Bernstein*
                                          STUART M. BERNSTEIN
                                          United States Bankruptcy Judge

18